# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SCOTT A. WILLIAMS,
        Plaintiff,

v.                              Case No. 06-C-1051

MATTHEW FRANK,
ROBERT HUMPHREYS,
BRAD HOMPE, CAPTAIN ALDANA,
LT. CAIRA, TERESA WIEGAND,
RICK RAEMISCH, SANDRA HAUTAMAKI
and BRENDA LaBELLE,
        Defendants.

## DECISION AND ORDER

On October 10, 2006, plaintiff Scott A. Williams, who was then incarcerated at the Racine Correctional Institution ("RCI"), lodged a pro se a civil rights complaint under 42 U.S.C. § 1983.[1] On November 22, 2006, I screened plaintiff's complaint and concluded that it arguably stated a First Amendment claim, an Eighth Amendment claim and Fourteenth Amendment due process and equal protection claims based on his allegations that the defendants prohibited him from contacting his minor son and his fiancé. Defendants have filed a motion to seal and a motion for summary judgment.

## I.  BACKGROUND

While plaintiff was incarcerated at RCI, plaintiff's fiancé, Julie Thiery ("Julie"), and plaintiff's and Julie's son lived with Julie's parents, Tom and Vicki Thiery.[2] On August 11,

---

[1]After the filing of this lawsuit, plaintiff was released on parole.

[2]It is not entirely clear whether plaintiff and Julie were engaged to be married. I will assume for the purpose of this decision that they were engaged.

2006, Tom Thiery contacted RCI and told defendant Vincent Caira, Jr. that he did not want plaintiff to have further contact with his home via mail or telephone. Pursuant to DOC policy regarding complaints of this nature, Caira issued a "no-contact order" stating:

> RCI/STF management has been notified that you have been attempting to make unwanted contact with Tom and Vicki Thiery and/or their family. This letter serves as official notice, per the Thiery family's request that you are to have no further contact with them. Contact includes, but is not limited to written letters, phone calls, or any contact through a third party. Failure to comply with this directive will result in disciplinary action. Any questions regarding the matter should be directed to Captain Aldana.

(Compl. Ex. A.) In an affidavit filed by defendants in the present case, Caira has stated that he did not know that plaintiff's fiancé or son lived with the Thierys when he issued this order.

Plaintiff complained about the order to Caira, who told plaintiff to contact his supervisor, defendant Jason Aldana, with any questions. Plaintiff then complained to Aldana that the order was interfering with his parental rights. Aldana did not know of which order plaintiff was complaining and referred the complaint to another staff member. Plaintiff then submitted a second complaint. Defendant Hompe received the complaint and discussed it with defendant Teresa Wiegand, plaintiff's unit manager. Hompe instructed Wiegand to explain to plaintiff that he could not contact the Thierys' residence but he could otherwise contact Julie and his son. The parties dispute whether Wiegand explained this to plaintiff. Plaintiff then complained through the inmate grievance system, which defendant Brenda LaBelle examined and recommended for dismissal because it raised a complaint "outside of the Inmate Complaint Review System altogether." (Compl. Ex. J.) Defendant Robert Humphries, the RCI warden, accepted LaBelle's recommendation and dismissed the complaint. Plaintiff appealed and defendants Sandra Hautamaki and Rick Raemisch affirmed the dismissal.

2

Plaintiff also complained about the no-contact order to his social worker. The social worker asked Hompe about the order, and thereafter wrote a letter to plaintiff stating:

> The deputy warden stated that for now you have to follow the RCI letter that stated you cannot contact your son. I would document this, and speak or write to your attorney to find out what to do next. Getting TLU status will not help your situation at all. We can talk about this more next week if you would like.

(Compl. Ex. K.) In an affidavit filed by defendants in the present case, the social worker claims that Hompe told her only that plaintiff had to follow the instructions on the order, and that she read the order and interpreted it herself.

On October 10, 2006, plaintiff filed the present lawsuit. After such date, defendants discovered that Tom and Vicki Thiery had custody of plaintiff's son and plaintiff had no visitation rights regarding his son during the relevant period.

## II. MOTION TO SEAL

Pursuant to General Local Rule 79.4, defendants have moved to place Exhibit 1002 under seal because it contains confidential information. This exhibit includes documents from In re the Guardianship of T.W., Scott Williams v. Thomas & Vicki Thiery, Racine County Case Number 06-JG-02, and letters from plaintiff to Tom and Vicki Thiery, which include the name of plaintiff's minor son. Defendants contend that it is necessary to seal this exhibit to protect the identity of the minor child and the confidentiality of the documents. Plaintiff has not opposed the motion. I conclude that defendants have established good cause to place that exhibit under seal and will direct the clerk of court to seal the relevant document in accordance with General Local Rule 79.4(b).

3

## III.  MOTION FOR SUMMARY JUDGMENT

**A.     Legal Standard**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Material facts are those facts that, under the applicable substantive law, "might affect the outcome of the suit." Anderson, 477 U.S. at 248.  A dispute over material facts is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.  The movant bears the burden of showing the needlessness of trial.  However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden to produce evidence which would support a reasonable jury verdict.  Id. at 267.  In considering a motion for summary judgment, I may consider any materials that would be admissible or usable at trial. Woods v. City of Chi., 234 F.3d 979, 988 (7th Cir. 2000).

In evaluating a motion for summary judgment, I am obliged to draw all inferences in a light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  However, I am "not required to draw every conceivable inference from the record – only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991).

4

**B. Analysis**

    **1. First Amendment and Due Process Claims**

In Overton v. Bazzetta, 539 U.S. 126 (2003), the Supreme Court examined Michigan regulations governing prison visitation, including several that interfered with prisoners' ability to visit with their family members. The Court discussed the prisoner plaintiffs' First Amendment and Due Process claims together. Id. at 131-36. It noted that these amendments protect "certain kinds of highly personal relationships." Id. at 131 (internal quotation omitted). It stated that outside the prison context, individuals have the right to "maintain certain familial relationships, including association among members of an immediate family." Id. at 131 (citing Moore v. City of E. Cleveland, Ohio, 431 U.S. 494 (1977) (plurality opinion)). However, the Court found that Overton did not present "an appropriate case for further elaboration of those matters" because [t]he very object of imprisonment is confinement." Id. It noted that prisoners must surrender rights inconsistent with incarceration, including, in most respects, the right of association. Id.

The Overton court held that the proper standard for such a case could be found in Turner v. Safley, 482 U.S. 78 (1987). 539 U.S. at 132. In Turner, the Court stated that a prison rule or regulation that restricts a prisoner's constitutional rights is valid only if it is reasonably related to legitimate penological interests. 482 U.S. at 89; see also Lindell v. Frank, 377 F.3d 655, 657 (7th Cir. 2004). Courts must consider four factors when determining whether a prison regulation is constitutional:

> whether the regulation has a valid, rational connection to a legitimate governmental interest; whether alternative means are open to inmates to exercise the asserted right; what impact an accommodation of the right would

5

have on guards and inmates and prison resources; and whether there are
ready alternatives to the regulation.

Overton, 539 U.S. at 132 (internal quotations omitted).

In the present case, defendants first argue that the no-contact order did not interfere with plaintiff's relationship with his son or fiancé. However, I find that there is a genuine issue of material fact concerning this issue. I accept as true defendants' assertion that the order only barred plaintiff from contacting the Thierys' home or otherwise contacting Tom and Vicki Thiery, and thus did not prevent plaintiff from contacting Julie or his son in some other way. However, the language of the no-contact order was ambiguous and could have led plaintiff to believe that he could not contact Julie or his son at all and thereby interfered with his relationship with them.[3] Plaintiff denies that any prison official told him that such order meant anything other than what it said and it is clear that at least one prison official – plaintiff's social worker – explicitly told him that the order prevented him from having any contact with Julie or his son.

Defendants alternatively argue that any interference with plaintiff's rights was reasonably related to legitimate penological interests. Defendants contend that DOC policy provides for the issuance of no-contact orders in order to protect the public from inmate harassment and further the prisoners' rehabilitation. They state that while they encourage prisoners to maintain contact with family and others, unwanted contact with anyone risks

---

[3]Given that Tom and Vicki Thiery had custody of plaintiff's son during the relevant period, it is questionable whether the no-contact order affected the relationship. Presumably, even if the prison had not issued the order, the Thierys would have simply refused to allow plaintiff to speak to or write to his son. However, because it is unclear what the Thierys would have done in the absence of an order, I cannot say at this time that the order did not interfere with plaintiff's relationship with his son.

6

harassment and undermines rehabilitation. Further, defendants argue that the DOC policy to issue no-contact orders rather than scanning each letter and phone call for harassing material is related to its interest in preserving administrative resources.

Defendants also maintain that plaintiff had alternative means of exercising his right to associate with family members. They assert that they did not prevent plaintiff from contacting Julie or his son so long as he did not contact them at the Thierys' home.[4] In addition, defendants note that Julie was on plaintiff's list of approved visitors and thus was allowed to visit plaintiff. Finally, defendants state that they would have rescinded the no-contact order if plaintiff had presented them with a court order regarding visitation with his son requiring them to do so, but plaintiff never provided them with such a court order.

Defendants further assert that accommodation of plaintiff's rights (presumably by allowing plaintiff to contact Julie and her son at the Thierys' home) would have a detrimental effect on the safety of the public, guards, other inmates and the allocation of prison resources and have pointed to evidence in the record substantiating their assertion. For instance, there is testimony in the record that permitting prisoners to contact people who do not want to be contacted has the potential of subjecting members of the public to harassment. Further, the undisputed evidence shows that there are no obvious, easy alternatives to the no-contact order.

Plaintiff has not offered any arguments nor has he pointed to any evidence in the record regarding the Turner factors. Indeed, nowhere in his two-page brief does plaintiff

---

[4]Practically, because the Thierys had custody of plaintiff's son, it is unlikely that plaintiff would have been able to contact his son away from their residence. However, this is the result of a custody order and the Thierys' child-rearing decisions, not the result of state action.

7

even offer a response to defendants' arguments concerning such factors. "Even pro se litigants . . . must expect to file a legal argument and some supporting authority." United States ex rel. Verdone v. Circuit Court for Taylor County, 73 F.3d 669, 673 (7th Cir. 1995) (per curiam). As the Court of Appeals for the Seventh Circuit has recognized, "[a] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority . . . .forfeits the point." Pelfresne v. Vill. of Williams Bay, 917 F.2d 1017, 1023 (7th Cir. 1990). It was plaintiff's burden to disprove the validity of the no-contact order and he made no attempt to satisfy that burden. See Overton, 539 U.S. at 132 and 136.

In any case, protection of the public, rehabilitation of inmates and administrative concerns are all legitimate penological goals. See Overton, 539 U.S. at 133 (protecting the public); Procunier v. Martinez, 416 U.S. 396, 413 (1974) (rehabilitation and administrative concerns); U.S. v, Whalen, 940 F.2d 1027, 1035 (7th Cir. 1991) (protecting the public); Guajardo v. Estelle, 580 F.2d 748, 755-56 n.4 (5th Cir. 1978) (same). And defendants' remaining arguments, regarding plaintiff's alternative means to exercise his rights and the effect of further accommodating plaintiff's rights, are sound. Thus, defendants are entitled to summary judgment on plaintiff's First Amendment and Due Process claims. See Celotex Corp., 477 U.S. at 322.

**2.   Remaining Claims**

Plaintiff has also asserted a violation of his Fourteenth Amendment right to equal protection of law and his Eighth Amendment right to be free from cruel and unusual punishment. However, plaintiff has not explained how defendants violated such rights nor has he disputed defendants' arguments regarding such claims.

8

As to the Equal Protection Clause, plaintiff has not asserted that he belongs to any suspect class. As such, he can only prevail by showing that he was "intentionally treated differently from others similarly situated and . . . there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). In the Seventh Circuit, a "class of one" plaintiff must "present evidence that the defendant deliberately sought to deprive him of the equal protection of the law for reasons of a personal nature unrelated to the duties of the defendant's position." Hilton v. City of Wheeling, 209 F.3d 1005, 1008 (7th Cir. 2000). Defendants correctly note that plaintiff has not provided evidence identifying anyone similarly situated to him who was treated differently. Plaintiff utterly failed to meet his "very significant burden" to make such showing. Discovery House, Inc. v. Consol. City of Indianapolis, 319 F.3d 277, 283 (7th Cir.2003).

In order to prevail on his Eighth Amendment claim, plaintiff would have to show (1) that he has suffered an objectively, sufficiently serious injury, and (2) that prison officials inflicted the injury with deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The Overton court noted that restrictions on visitation with the public do not generally implicate the Eighth Amendment but that an arbitrary restriction on all visitation privileges could possibly invoke the amendment. 539 U.S. at 137. Defendants correctly note that plaintiff has presented no evidence that the no-contact order was arbitrary or that it blocked all contact with plaintiff's fiancé or son. Defendants have presented evidence that they did not prevent plaintiff's fiancé and son from visiting him and plaintiff has not disputed such evidence.

9

As such, plaintiff has again failed to meet his burden to present evidence supporting his remaining claims and thus defendants are entitled to summary judgment as to such claims. See Celotex Corp., 477 U.S. at 322.

## IV. CONCLUSION

**For the foregoing reasons,**

**IT IS ORDERED** that defendants' motion to seal is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall place Exhibit 1002 under seal in accordance with General Local Rule 79.4.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

Dated at Milwaukee, Wisconsin, this 23 day of October, 2007.

/s_____
LYNN ADELMAN
District Judge